# Hart's Estate (No. 2).

*Trust and trustees—Appropriation by trustee of his own share—Surcharge —Value of securities.*

If a trustee appropriates before general distribution the trust assets to his own use, he should account for them not as of the date of the inventory, nor as the date of the accounting, but as of the date of the appropriation.

  Where a testamentary trustee who has a share in the trust estate, four years after the death of the testator converts to his own use certain of the securities of the estate, without having had them set apart to him by a decree of the court, he will on his accounting ten years after the death of the testator, be charged with the actual value of the securities at the time of the conversion, as shown˙by actual sales at that time

Argued March 26, 1902. Appeal, No. 388, Jan. T., 1901, by Charles Henry Hart, executor and trustee of Samuel Hart, deceased, from decree of O. C. Phila. Co., Oct. T., 1898, No. 552, dismissing exceptions to adjudication in estate of Samuel Hart, deceased. Before McCollum, C. J., Dean, Fell, Brown and Mestrezat, JJ. Affirmed.

Exceptions to adjudication.
The facts are stated in the opinion of the Supreme Court.

*Errors assigned* (1, 2) are quoted in the opinion of the Supreme Court.

*Frank P. Prichard* and *John G. Johnson*, for appellants.

*James Aylward Develin* and *Alexander Simpson, Jr.*, for appellee, cited: Stewart's App., 110 Pa. 410; Work v. Bennett, 70 Pa. 484; Jamison's Estate, 163 Pa. 143; Norris's App., 71 Pa. 106; Murray v. Stanton, 99 Mass. 345.

Opinion by Mr. Justice Dean, October 13, 1902:
Appellant's second and third assignments of error are as follows:
" 2. The court below erred in surcharging the trustee with alleged profit on 150 shares of Peerless Brick Company stock, viz : $8,749.50.
" 3. The court below erred in surcharging the trustee with interest amounting to $15,474.80, upon an alleged value of 150 shares of Peerless Brick Company stock."
The general statement of facts in appeal of Charles Henry Hart from decree of orphans' court, surcharging him as executor with $10,000 Ætna Iron Company bonds, opinion handed down this day, covers all that is material as a history of the case in this appeal.
What ought appellant to have been charged for 150 shares of " Peerless Brick Company " and other stocks, which, about November, 1890, he took from the securities of the estate and appropriated to his own use? It was, unquestionably, such an appropriation, although his methods, as disclosed by his account, do not clearly show this, for he continued to charge him-

self as trustee with the interest and dividends on the stocks as if they still belonged to the estate. But they were no longer under his control, nor did he possess them when the account was filed; they stood pledged as collateral for individual loans to himself; we do not know the exact terms of the pledge, but the equitable title, probably, still remained in him subject to the legal ownership of the lenders of the money. If he had filed his account at date of the appropriation, more than four years after his appointment, the court would have set aside for him, as part of his share, at a price assented to by him, these same securities; this would have ended any further accountability on his part; he did not choose to adopt this method, and not until ten years afterward did he file his account. He did not subject himself to any harsh penalty by this very irregular method of performing his duty, neither is the estate to be subject to any loss thereby. He wanted his individual share at that time; he could have got it in an entirely lawful manner by filing his account and having distribution; the most he can now ask is that he shall be treated just as if he had done so. This is what the court below sought to do, that is, to charge him with the actual market value of the stocks at the time they were taken and the interest thereon up to the date of account filed and distribution, then to credit him with all the interest and dividends thereon, which he, after the appropriation continued to credit the estate as if they still belonged to it. All the other securities appropriated by appellant, except the Peerless Brick Company shares are credited to the estate at their appraised value, which was about the price they would have brought if sold at the date of conversion. But it is a special complaint of appellant that he was charged $158.33 per share for this brick company stock, when it was only worth the appraised value, $100 per share. When an executor or trustee undertakes to appropriate any part of the estate assets and charge himself with them as part of his individual share of the estate without filing an account and having a judicial distribution, he ought to be prepared, when called to account ten years afterwards, to show at least, approximately, the actual value of the assets at the date he converted them. The burden of showing the value should not be imposed upon the cestuis que trust. The accountant adduced no evidence at the audit of value other

than the appraisement, and that now they were not worth even that. Counsel for appellee called but one witness, Milne, who testified that in 1890 he was the principal buyer of the stock, and that he paid for a lot which aggregated $36,000 at the rate of $158.33 per share ; that he had known a sale as high as $175 per share ; then further, appellee quoted from an affidavit of defense filed by the executor in a suit brought against him in the common pleas, in which he alleged he had delivered brick company stock to plaintiff as collateral for the debt sued upon as follows: "Said shares as appears from plaintiff's original statement are still in his possession. The value of said shares at the time when they were delivered by me to the plaintiff as such collateral security, and at the time when I notified plaintiff as aforesaid, was upwards of $150 per share." The appellant adduced no evidence which overcame the weight of this ; it was shown that the brick company had ceased paying dividends, but it also appeared that it owned valuable land ; appellant testified the stock had no market value. The rule is a settled one, that if an accountant appropriates, before general distribution, the trust assets to his own use, he should account for them, not as of the date of the inventory, nor as of the date of the accounting, but as of the date of the appropriation. From the evidence before it, which was the same as before the auditing judge, the court below was of the opinion that appellant should account for the brick company stock at the price of $158.33 per share. In the opinion the court uses the words, " market value," not in the sense of that indicated by a sale at a public stock board ; it was not a " listed " stock and had no such value ; it was used in the sense that this was the actual market value of the stock at the time of its conversion, as distinguished from any notional or ideal value for some particular reason. This was what those who at the time, Milne for instance, wanted the stock, were willing to pay, and what the representatives of Chapman's estate who had it for sale, were willing to take. It was but little more than appellant himself swore it was worth, at the time he pledged it. We cannot on the uncontradicted evidence before us, meager as it is, find that the court below erred in charging accountant $158.33 per share. It is a mistake to term such a charge punishment of accountant ; it is but compelling him to account to the estate for the value of an

asset at the time he took it; this is a risk which every executor or trustee takes, whenever he, without an order from the court, undertakes to make a distribution, either to himself or other legatees before filing account. We see nothing immoral in the transaction; legally it was irregular and attended with risk as well as with probable vexatious litigation in the future; both penalties appellant must now undergo, not as a punishment for mala fides, but because they are the almost inevitable consequences of the adoption of another than the plainly lawful methods in the administration of a trust. In fact, a careful consideration of the account and the testimony leads us to no harsher judgment than, that appellant was seemingly incapable of apprehending clearly the duties of an executor and trustee; in his accounts he apparently did not see clearly how they should be kept nor record plainly his trust dealings; he seems to have put down the simplest transactions in such involved roundabout methods, as might well on a cursory examination, arouse suspicion; but he intended no wrong to his cestuis que trust and we acquit him of any; nevertheless, he cannot escape the legal consequences of his jumbling methods.

The assignment of error is overruled and the decree of the court below in the particular we have discussed is affirmed.